IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FIRE INSURANCE EXCHANGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:08-CV-475-WKW[WO] |
| | ) |
| JEFFREY McCOY; LISA BLEDSOE; | ) |
| and J.J., a Minor by and through his | ) |
| Mother and Next Friend, Lisa Bledsoe, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Fire Insurance Exchange ("FIE") brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking a determination of its duty to defend and/or indemnify Defendant Jeffrey McCoy ("McCoy") under its insured's Homeowners policy bearing Policy Number 0915034569 (Doc. # 1). Lisa Bledsoe ("Bledsoe"), on behalf of her minor son, J.J., sued McCoy in Montgomery County Circuit Court after her son was bitten by one of McCoy's dogs while staying at McCoy's house.[1] McCoy responded by filing a counterclaim alleging bad-faith breach of contract and seeking punitive damages (Doc. # 6-2).

Following a bench trial held on June 17, 2009, this cause is before the court for a decision on FIE's declaratory judgment action and McCoy's counterclaim. After careful

---

[1] *Bledsoe v. McCoy,* No. CV-2007-900348 (Ala. Cir., Montgomery County).

consideration of the arguments of counsel, the evidence and the applicable law, the court makes the following findings of fact and conclusions of law, in accordance with Rule 52 of the Federal Rules of Civil Procedure.

## I.  JURISDICTION AND VENUE

Jurisdiction is exercised pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 2201.  The parties do not contest personal jurisdiction or venue, and the court finds allegations sufficient to support both.

## II.  STANDARD OF REVIEW

In a civil case, the same burden of proof applies "regardless of whether the finder of fact is a judge in a bench trial or a jury."  *Prickett v. United States*, 111 F. Supp.2d 1191, 1192 (M.D. Ala. 2000).  A plaintiff has the burden of proving each element of his claim by a preponderance of the evidence.  As succinctly stated by the Supreme Court of the United States,

> "[t]he burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'"

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (citations omitted).  Moreover, in a bench trial, the judge's "function includes weighing the evidence, evaluating the credibility of witnesses, and deciding questions of fact, as well as issues of law."  *Prickett*, 111 F. Supp. 2d at 1192 (citing *Childrey*

*v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993) (holding that "it is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony")).

### III.  FINDINGS OF FACT

Based on the testimony and evidence presented at the bench trial, the court finds the following facts.  McCoy and Bledsoe are first cousins.  J.J. is Bledsoe's son and was 12 years old at the time of the incident.  On June 24, 2005, J.J. was a guest at McCoy's home when one of McCoy's Rottweilers attacked J.J. in McCoy's backyard, causing lacerations to his right leg from the mid-calf area up to the knee and to his left leg near the Achilles tendon.  McCoy, realizing that the wounds were serious, immediately transported J.J. to the hospital.  J.J. received twelve stitches for his injuries.

After departing from the emergency room, McCoy and Bledsoe had a conversation wherein McCoy mentioned that he was contemplating reporting the incident to FIE.  Bledsoe told McCoy not to worry about it.  Relying on the amicability of familial ties, the representations of his cousin, and his own perception of the finality of the incident, McCoy chose not to report the attack to FIE.

McCoy lost contact with Bledsoe soon thereafter.  In August 2006, McCoy received a letter from an attorney retained by Bledsoe, informing him of an impending state-court

lawsuit, filed on behalf of J.J., seeking compensatory and punitive damages.[2] On August 29, 2006, McCoy contacted FIE for the first time about the dog biting occurrence (Pl.'s Ex. 9 & 10). In a letter dated September 7, 2006, FIE declined to extend coverage to McCoy, claiming he had failed to provide notice of the occurrence within a reasonable amount of time (Pl.'s Ex. 2). Nevertheless, upon a reservation of rights, FIE appointed counsel who represented McCoy's interests for nearly eight months before withdrawing. FIE had also made at least one medical payment to J.J. under the policy.

## IV. DISCUSSION

A. <u>Notification</u>

The insurance contract between McCoy and FIE provides that prompt notification is a condition precedent to any duty on the part of FIE to provide coverage, indemnify, or defend McCoy in any lawsuit. Specifically, the policy states: "[i]n case of an occurrence the insured will . . . give written notice to us or our agent as soon as possible . . . " (Pl.'s Ex. 2). Under Alabama law, such a notice requirement in an insurance policy is a condition precedent to the insured's coverage under that policy. *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983); *Martin v. Auto-Owners Ins.*, 329 So. 2d 547, 550 (Ala. Civ. App. 1976). Notice must be given "within a reasonable time under all the circumstances." *U.S. Fid. & Guar. Co. v. Baldwin County Home Builders Assoc., Inc.*, 770 So. 2d 72, 75 (Ala.

---

[2] The reason J.J. and Bledsoe ultimately decided to file suit was because of complications involving J.J.'s scar tissue. In order to play high school football, J.J. needs plastic surgery to add layers of skin to his scars; otherwise, they would be in danger of splitting open. As a "cosmetic" surgery, Bledsoe's and J.J.'s health insurance would not cover the procedure.

2000) (quoting *Am. Liberty Ins. v. Soules*, 258 So. 2d 872, 879 (Ala. 1972)). In determining whether an insured has satisfied the reasonable notice requirement, courts consider: (1) the length of the delay, and (2) the existence of a reasonable excuse for the delay. *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 883 (Ala. 1976).

### 1. *Length of the Delay*

The length of delay between the incident and McCoy's notification of FIE of that incident was a little over fourteen months. The Alabama Supreme Court has held that similar, even less substantial, delays without excuse are unreasonable as a matter of law. *See Pharr*, 429 So. 2d at 1019-20 (holding that an eight-month delay without excuse was unreasonable as a matter of law); *Thomas*, 334 So. 2d at 883 (holding that a six-month delay without a showing of a reasonable excuse was unreasonable as a matter of law); *Correll v. Fireman's Fund Ins. Cos.*, 529 So. 2d 1006, 1009 (Ala. 1988) (affirming trial court's judgment that one year delay is unreasonable without sufficient "reasons for that delay"). Based on these Alabama Supreme Court cases, the court finds that the fourteen months that lapsed between the occurrence of the attack and the date on which McCoy notified FIE is unreasonable as a matter of law *unless* McCoy can present a reasonable excuse for that delay.

### 2. *Reasonable Excuse for Delay*

Even if the delay is unreasonable as a matter of law, the notice may still be timely if there exists an *objectively* reasonable excuse for the delay. *Thomas*, 334 So. 2d at 883. The

Alabama Supreme Court has identified a few limited sets of circumstances where otherwise unreasonable delay is excusable:

> Generally, delay is excusable in the case of an accident which is trivial and results in no apparent harm or which furnishes no ground for [the] insured, acting as a reasonable and prudent man, to believe at the time that a claim for damages will arise or that the injury is one insured against. In such case notice is not required until some claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages. Clearly, notice is necessary when there has been such an occurrence as would lead a reasonable and prudent man to believe that it might give rise to a claim for damages.

*Progressive Specialty Ins. Co. v. Steele*, 985 So. 2d 932, 939 (Ala. Civ. App. 2007) (quoting *Pan Am. Fire & Cas. Co. v. DeKalb-Cherokee Counties Gas Dist.*, 266 So. 2d 763, 771 (Ala. 1972) (quoting 45 C.J.S. *Insurance* § 1056)).

McCoy argues that his fourteen-month delay is excusable for two reasons: (1) his perception that J.J.'s injuries were *de minimis*; and (2) his belief, after Bledsoe told him "not to worry about it," that no claim would arise from the incident.

Based on McCoy's response to J.J.'s accident and based on the enduring scars from the attack, McCoy's argument that the accident was trivial and resulted in no apparent harm does not withstand scrutiny. McCoy testified at trial that he immediately determined, after looking at J.J.'s leg, that his (J.J.'s) injuries required medical attention and that he would probably need stitches. McCoy also testified that he was concerned about a possible injury to J.J.'s Achilles tendon. Furthermore, the lasting and pronounced scars on J.J.'s legs bear

evidence of the seriousness of his injuries. From this testimony and the court's inspection of J.J.'s scars, the court concludes that the injuries were not trivial and that their gravity was immediately apparent to McCoy.

McCoy also argues that he did not believe a claim would arise from the accident. He bases his belief on the familial ties he has to Bledsoe and J.J. and on Bledsoe's representations to him following the incident. While it is understandable that McCoy chose to rely on a family member's promise not to file a claim, this would require subjective inquiry as opposed to the requisite objective inquiry set forth in *Pan American Fire & Casualty Co.*, 266 So. 2d at 771. The relevant inquiry is whether McCoy, acting as a "reasonable and prudent" man, would have believed that no claim would arise from the occurrence. *Id.*

The court answers this question in the negative. McCoy's conversation with Bledsoe, in which he told her that he was contemplating notifying FIE, demonstrates McCoy's knowledge that a claim could and might very well arise from the accident. Although McCoy and Bledsoe had a close relationship when they were younger, they both acknowledged in their testimony that they had been distant for a number of years prior to the incident. In some circumstances, a person may be acting reasonably and prudently by relying on a close family member's promise that he or she would not file a claim. However, McCoy's admittedly distant relationship with Bledsoe at the time of the accident does not rise to a level of familial confidence that would justify relying on her promise not to file a claim. McCoy's subjective

belief that no claim would arise was objectively unreasonable. Because McCoy has proffered no reasonable excuse for his delay, notice, as required by the contract under Alabama law as a condition precedent to coverage, was lacking. Therefore, FIE is absolved of its duties to McCoy under the insurance policy.

**B.      McCoy's Counterclaim**

McCoy alleges a counterclaim for bad-faith breach of contract and seeks punitive damages. Because the court finds that FIE is absolved of its contractual obligations to McCoy due to his failure to give notice to FIE within a reasonable time, the court's examination of McCoy's counterclaim will be cursory. In order to prevail on a bad-faith breach of contract claim in the insurance context, a court must make the threshold finding that there was, in fact, a breach of contract. *See McDole v. Alfa Mut. Ins. Co.*, 875 So. 2d 279, 285 (Ala. 2003) (holding that a bad faith refusal-to-pay claim fails as a matter of law when the underlying breach-of-contract claim fails as a matter of law); *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982) (an essential element of a claim alleging a bad-faith refusal to pay is that the insurer has breached the insurance contract). Since McCoy failed to provide timely notice, FIE was relieved from the obligations of the contract and thus did not breach it. Therefore, McCoy's claims for bad-faith breach of contract and punitive damages fail as a matter of law.

## V.  CONCLUSION

For the foregoing reasons, judgment is due to be entered in favor of Plaintiff Fire Insurance Exchange, and against Defendants McCoy, Bledsoe, and J.J., and Fire Insurance Exchange is entitled to a declaratory judgment that under its insured's Homeowners policy bearing Policy Number 0915034569, it has no duty to defend or indemnify McCoy in *Bledsoe v. McCoy*, No. CV-2007-900348 (Cir. Ct. Montgomery County).

Judgment is also due to be entered in favor of Counterclaim Defendant Fire Insurance Exchange, and against Counterclaim Plaintiff Jeffrey McCoy, on the bad-faith breach of contract claim.

An appropriate judgment will be entered.

DONE this 1st day of July, 2009.

                                          /s/  W.  Keith Watkins
                                   UNITED STATES DISTRICT JUDGE